Garvey, Tirelli & Cushner, Ltd.
*Attorneys for Debtor*
50 Main Street, Suite 390
White Plains, New York 10606
T: (914) 946-2200 / F: (914) 946-1300
Todd S. Cushner, Esq.
todd@thegtcfirm.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**POUGHKEEPSIE DIVISION**

-------------------------------------------------------X
In re:

                                                         Chapter 11
    Gerald J. Casesa,                            Case No. 15-36684 (CGM)

                  Debtor
-------------------------------------------------------X

# GERALD J. CASESA DISCLOSURE STATEMENT DATED DECEMBER 2, 2016

## *Table of Contents*

I. Introduction........................................................................................................................2
   A. Purpose of This Document..........................................................................................2
   B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ................3
      1. Time and Place of the Hearing to Finally Approve This Disclosure Statement
         and Confirm the Plan ...............................................................................................3
      2. Deadline For Voting to Accept of Reject the Plan .........................................3
      3. Deadline For Objecting to the Adequacy of Disclosure and Confirmation of
         the Plan ...................................................................................................................3
      4. Identity of Person to Contact for More Information.......................................4
   C. Disclaimer …..............................................................................................................4
II. Background........................................................................................................................4
   A. Description and Events Leading to Bankruptcy .........................................................4
   B. Significant Events During the Bankruptcy Case ........................................................5
   C. Primary Residence.......................................................................................................5
   D. Projected Recovery of Avoidable Transfers...............................................................6
   E. Claims Objections ......................................................................................................6
   F. Current and Historical Financial Conditions ..............................................................6
III. Summary of the Plan of Reorganization and Treatment of Claims ...................................6
   A. What is the Purpose of the Plan of Reorganization? ..................................................6
   B. Unclassified Claims ...................................................................................................7
      1. Administrative Expenses .................................................................................7
      2. Priority Tax Claims .........................................................................................8
   C. Class of Claims ..........................................................................................................8
      1. Classes of Secured Claims ..............................................................................8
      2. Classes of Priority Unsecured Claims.............................................................9

|      |     | 3. Classes of General Unsecured Claims ................................................................9 |
|------|-----|---|
|      | D.  | Means of Implementing the Plan ...........................................................................9 |
|      |     | 1. Source of Payment ................................................................................10 |
|      | E.  | Risk Factors ...........................................................................................................10 |
|      | F.  | Executory Contracts and Unexpired Leases .........................................................10 |
|      | G.  | Tax Consequences of the Plan ..............................................................................11 |
|      |     | 1. Tax Consequences to the Debtor ..........................................................11 |
|      |     | 2. Tax Consequences to Unsecured Creditors ..........................................11 |
| IV.  | Confirmation Requirements and Procedures .....................................................................12 |
|      | A.  | Who May Vote or Object ......................................................................................12 |
|      |     | 1. What Is an Allowed Claim? ..................................................................12 |
|      |     | 2. What Is an Impaired Claim? .................................................................12 |
|      |     | 3. Who is Not Entitled to Vote..................................................................12 |
|      |     | 4. Who Can Vote in More Than One Class ..............................................13 |
|      | B.  | Votes Necessary to Confirm the Plan ...................................................................13 |
|      |     | 1. Votes Necessary for a Class to Accept the Plan ...................................13 |
|      |     | 2. Treatment of Non-Accepting Classes...................................................13 |
|      | C.  | Liquidation Analysis .............................................................................................14 |
|      | D.  | Feasibility ..............................................................................................................14 |
|      |     | 1. Ability to Fund Plan ..............................................................................14 |
| V.   | Effect of Confirmation of Plan............................................................................................14 |
|      | A.  | Discharge of Debtor ..............................................................................................14 |
|      | B.  | Modification of Plan .............................................................................................14 |
|      | C.  | Final Decree ..........................................................................................................15 |
|      | D.  | Post-Confirmation Reports ...................................................................................15 |

I. **INTRODUCTION**

This is the Disclosure Statement (the "Disclosure Statement") in the chapter 11 case of Gerald J. Casesa (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on December 2, 2016. A full copy of the Plan is attached to this Disclosure Statement as **Exhibit "A"**. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 8-10 of this Disclosure Statement. General unsecured creditors are classified in Class 2, and will receive a pro-rated distribution on their allowed claims, based upon the Debtor's disposable income, in cash over five (5) years following the effective date.

A. **PURPOSE OF THIS DOCUMENT**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;

- How the Plan proposes to treat claims of the type you hold (*i.e.*, what you will receive on your claim if the Plan is confirmed);
- Who can vote on or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in the event of a liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B. **DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1. Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division, 355 Main Street, Poughkeepsie, New York 12501.

*2. Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the completed ballot in the enclosed envelope to Garvey, Tirelli & Cushner, Ltd., Counsel for the Debtor, 50 Main Street, Suite 390, White Plains, NY 10606- Attn: Todd S. Cushner, Esq. / James J. Rufo, Esq.  See section IV. A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

*3. Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon Garvey, Tirelli & Cushner, Ltd., Counsel for the Debtor, 50 Main Street, Suite 390, White Plains, NY 10606 Attn: Todd S. Cushner, Esq. / James J. Rufo, Esq. by _____.

*4. Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Garvey, Tirelli & Cushner, Ltd., Counsel for the Debtor, 50 Main Street, Suite 390, White Plains, NY 10606- Attn: Todd S. Cushner, Esq. / James J. Rufo, Esq.

C.  **DISCLAIMER**

*This Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II.  **BACKGROUND**

A.  **DESCRIPTION OF THE DEBTOR AND EVENTS LEADING TO BANKRUPTCY**

The Debtor, is an individual with an ownership interest in real estate located at 8 Roselawn Road, Highland Mills, NY 10930 (the "Primary Residence") and a commercial office building located at 219 Route 32, Central Valley, NY 10917 ("Central Valley Property").  The Debtor is the sole owner and operator of 219 Development LLC ("219 Development") and the Debtor owns one hundred percent (100%) of the shares in said corporation.  The Debtor earns approximately $7,151.00 per month in connection with his employment.  The Debtor maintains and derives rental income from the Central Valley Property in the amount of approximately $1,936.00 per month.

Prior to the Debtor's bankruptcy filing, the Debtor experienced significant and substantial financial difficulties the Debtor experienced significant and substantial financial difficulties due to a decrease of new business and work for the Business.  As a result of the Business's decrease in work, the Debtor fell behind on his monthly mortgage payments for his Primary Residence which also contributed to the Debtor's filing and subsequent request for loss mitigation.  However, the Business has experienced an increase in sales and revenues which has led to an increase in profits and financial stability.

B.  **SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE**

On September 14, 2015, (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Southern District of New York (Poughkeepsie Division) and has continued in possession of his property and management of his affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The case was assigned to the Hon. Chief Judge Cecelia G. Morris, United States Bankruptcy Judge, for administration under the Bankruptcy Code.

On the Petition Date, the Debtor filed with the Bankruptcy Court his Statement of Financial Affairs, Schedules of Assets and Liabilities, Schedule of Executory Contracts and Unexpired Leases, and Lists of Creditors (ECF No. 1) (the "Schedules").

As part of the Schedules, the Debtor has claimed his homestead exemption and various exemptions in his personal property, under New York Civil Practice Law and Rules ("CPLR") § 5206, including exemptions in cash, bank accounts, security deposits, household goods, collectables, wearing apparel and jewelry.  Copies of the Schedules are available with the Clerk of the Bankruptcy Court.

The Debtor reserves the right to amend the Schedules during the Chapter 11 Case. On October 27, 2015, the United States Trustee conducted the Debtor's Section 341(a) Meeting of Creditors.

On September 14, 2015, the Debtor filed and served an Application to Employ Garvey, Tirelli & Cushner, Ltd as Attorneys for the Debtor and Debtor-in-Possession on Presentment at ECF No. 7 (the "Application to Employ GTC"). On January 4, 2016, an Order Authorizing Gerald J. Casesa to Retain the Law Offices of Garvey, Tirelli & Cushner Ltd as Attorney for the Debtor and Debtor-in-Possession was entered on this Court's docket at ECF No. 33.

On September 28, 2015, the Debtor filed and served a Loss Mitigation Request at ECF No. 14. On October 22, 2015, an Order Granting Loss Mitigation Request (the "Loss Mitigation Order") was signed and on October 23, 2015, the Loss Mitigation Order was entered on this Court's Docket at ECF No. 17. Service of the Loss Mitigation Order was effectuated on December 18, 2015 at ECF No. 26. Through the Loss Mitigation process the Debtor was able to obtain a favorable loan modification on the Primary Residence. On June 14, 2016, the Debtor filed a Motion to Approve Loan Modification with Ocwen Loan Servicing, LLC on Presentment for July 1, 2016 at ECF No. 58 with service being effectuated on June 15, 2016 at ECF No. 59. On July 12, 2016, this Court entered an Order Granting Motion to Approve Loan Modification with Ocwen Loan Servicing, LLC at ECF No. 62. On August 2, 2016, an Order was entered terminating Loss Mitigation and Final Report at ECF No. 64. The modification addressed mortgage arrears that existed and the Debtor's modified monthly mortgage payment is $2,450.70.

On December 22, 2015, the Debtor filed and served a Motion to Set Last Day to File Proofs of Claim and Approving the Form and Manner of Notice thereof on Presentment for January 11, 2016 (the "Bar Date Motion") at ECF No. 28. On January 12, 2016, this Court entered an Order Establishing Deadline for filing Proofs of Claim and Approving the Form and Manner of Notice thereof (the "Bar Date Order") at ECF No 36. The General Bar Date February 18, 2016 and the Governmental Bar Date is March 18, 2016. Service of the Bar Date Order was effectuated on January 14, 2016 at ECF No. 38.

On August 22, 2016, the Debtor filed and served a motion (the "Motion") to expunge Proof of Claim No. 5, filed by Schoonmaker Homes – John Steinberg, Inc. ("Schoonmaker" and/or "Steinberg") and or in the alternative reclassifying Claim No. 5 as a general, non-priority unsecured claim at ECF No. 68. On November 1, 2016, a hearing was held before this Court and the parties' advised the Court that they agreed to settle the matter pursuant to a stipulation of settlement whereby Claim No. 5 would be reclassified as a general, non-priority unsecured claim.

### C. THE PRIMARY RESIDENCE

The Debtor acquired the Primary Residence by deed dated February 19, 2001 and recorded on March 6, 2001 in the Orange County Clerk's Office in Liber 5472 Page 343. The Primary Residence is a single-family residence with a fair market value of approximately $360,000.00 pursuant to an appraisal dated November 19, 2013, a copy of which is annexed hereto as **Exhibit "B"**. On the Petition Date, the total amount due and owing on the Primary Residence was $549,398.00.

5

On September 28, 2015, the Debtor filed and served a Loss Mitigation Request at ECF No. 14. On October 22, 2015, an Order Granting Loss Mitigation Request (the "Loss Mitigation Order") was signed and on October 23, 2015, the Loss Mitigation Order was entered on this Court's Docket at ECF No. 17.  Service of the Loss Mitigation Order was effectuated on December 18, 2015 at ECF No. 26.

On June 14, 2016, the Debtor filed a Motion to Approve Loan Modification with Ocwen Loan Servicing, LLC (the "Motion to Approve") on Presentment for July 1, 2016 at ECF No. 58 with service being effectuated on June 15, 2016 at ECF No. 59.  On July 12, 2016, this Court entered an Order Granting Motion to Approve (the "Loan Mod Order") at ECF No. 62. On August 2, 2016, an Order was entered terminating Loss Mitigation and Final Report at ECF No. 64.  The Debtor's modified monthly mortgage payment is $2,450.70

### D. THE CENTRAL VALLEY PROPERTY

The Debtor is the sole owner and operator of 219 Development LLC ("219 Development") and the Debtor owns one hundred percent (100%) of the shares in said corporation.  The Business holds the deed for the commercial property located at 219 Route 32, Central Valley, NY 10917.  The Central Valley Property is a two (2) story, multi-tenant office building that contains seven (7) office spaces.  The Debtor obtained a full interior and exterior appraisal, dated June 2, 2016 that determined the fair market value of the Central Valley Property to be $570,000.00.  As per schedule D of the Debtor's petition, the Central Valley Property is encumbered by a first mortgage lien held by Orange County Trust Company wherein, 219 Development is the mortgagor and the Debtor is a guarantor.  At the Petition Date, the total amount owed on Orange County Trust Company's first mortgage lien was approximately $622,690.00.  The Business is current with its monthly mortgage payments to Orange County Trust Company.

All seven (7) of the office spaces at the Central Valley Property are occupied such that the Central Valley Property derives net operating income of approximately $23,232.00 per annum and approximately $1,936.00 per month.  As the sole owner, operator and shareholder of the Business, the Debtor includes the net operating income of $1,936.00 in addition to the income earned as salary and wages such that same shall be utilized to fund the Debtor's Plan.

### E. PROJECTED RECOVERY OF AVOIDABLE TRANSFERS

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions, as he does not believe any causes of action exist, but the Plan shall preserve any such actions to the extent that they exist.

### F. CLAIMS OBJECTIONS

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan; notwithstanding approval of this Disclosure Statement or approval of the Plan.

G.  **CURRENT AND HISTORICAL FINANCIAL CONDITIONS**

The identity and fair market value of the estate's assets are listed in the Liquidation Analysis annexed as **Exhibit "D"**. A summary of the Debtor's cash flow and budget since the commencement of the Debtor's bankruptcy case are set forth in **Exhibit "E"**.

III.  **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS**

A.  **WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION?**

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.  **UNCLASSIFIED CLAIMS**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with what is required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

*1. Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **TYPE** | **ESTIMATED AMOUNT OWED** | **PROPOSED TREATMENT** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date. | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if late. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the Court. | $20,000.00 | Paid in full on the effective date of the Plan, from the Debtor's disposable income or such other agreement between the Debtor and the Professionals. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |

7

| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement. |
|---|---|---|
| Office of the U.S. Trustee Fees | $650.00 | Paid in full on the effective date of the Plan. |
| **TOTAL** | $20,650.00 | |

*2. Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it will be paid in full, in cash, within thirty (30) days after the effective date. The Debtor does not have any priority tax claims under §§ 507(a)(8) of the Code.

C. **CLASSES OF CLAIMS**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*1. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Deutsche Bank Collateral Description: 8 Roselawn Road, Highland Mills, NY 10930 Allowed Secured Claim Amount: $583,851.36 Priority of Lien: First Principal owed: $583,851.36 Pre-pet arrearage: $0.00 Total claim: $583,851.36 | No | Unimpaired | Monthly Pmt.: $2,403.02 Pmts. Begin: 08/01/2016 Pmts. End: 11/01/2034 Interest rate: 3.25000% Treatment of Lien: Secured creditor shall retain its security interest in the property until paid in full. |

*2. Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

8

The following chart identifies the Plan's proposed treatment of Class 2 which contains general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | All unsecured claims allowed pursuant to 11 U.SC. § 502 | Impaired | Class 2 is impaired under this Plan, and each holder of a Class 3 General Unsecured Claims shall receive a distribution up to 100% of their Allowed Claim, in cash, from the Debtor's disposable income for five years from the Filing Date, made in quarterly payments in a minimum amount of $905.75 per quarter, for total aggregate plan payments totaling $18,115.00. The Class 3 Claims total the sum of $186,627.78 which includes the claim of Schoomaker Homes – John Steinberg Inc. in the amount of $181,737.68 which was reclassified as a nonpriority unsecured claim pursuant to a Stipulation of Settlement between the parties that shall be submitted to the Court for approval prior to the hearing date for approval of the Disclosure Statement. Given the current size of the unsecured creditor pool, Class 3 general unsecured creditors can expect to receive about 9.70% of their claims. Class 3 is entitled to vote on the Plan. |

D. **MEANS OF IMPLEMENTING THE PLAN**

1. *Source of Payments*

The Plan shall be funded from the Debtor's disposable income over the next 5 years. The Debtor shall first make the contribution necessary to make the payments of the amounts required on confirmation, namely outstanding United States Trustee fees pursuant to 28 U.S.C. 1930, if any, that are unpaid as of the Effective Date. Pursuant to Section 1115(a) of the Code, the Debtor is committing all of his disposable income and property to the Plan. Plan payments shall be made by the Debtor as disbursing agent.

E. **RISK FACTORS**

The proposed Plan poses minimal risks of default in that monies required to consummate the Plan will come from the Debtor's disposable income.

The Debtor has been continuously employed by his employer for many years, and is an established member of the staff. The Debtor anticipates that his employment will continue and has no reason to believe that he is at any risk of losing his employment.

9

Additionally, the Debtor's tenants have resided in their respective apartments for several years, with no history of non-payment. The tenants have each renewed their respective leases upon terms agreeable to both the Debtor and the respective tenant, without issue. Furthermore, with respect to the tenants residing at the Avenue P Property, a portion of the rental payment is paid by the State of New York under Section 8 housing provisions. For the foregoing reasons, the Debtor does not believe there is any risk in losing his rental income.

The creditors will receive more under the Debtor's Chapter 11 Plan than they would otherwise receive in a chapter 7 liquidation or dismissal of this case. If the Debtor's case was converted to a chapter 7 proceeding, since the Debtor does not have any non-exempt assets, the creditors would receive no distribution. Further, if the Debtor's case was dismissed, the creditors would have to rely solely upon its state court remedies for collection of their claims. Once again, since there is no equity in any of the Debtor's assets so there is little to no possibility of any recovery to any creditors.

F. **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Plan, in Section 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

The executory contracts and unexpired leases that the Debtor will assume under the Plan are as follows:

| N/A | N/A |
|---|---|

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Section 6.01 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.  If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is thirty (30) days from the Effective Date.*
Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G. **Tax Consequences of Plan**

*Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And / Or Advisors.*

10

Confirmation may have federal income tax consequences for the Debtor and Creditors. The Debtor has not obtained, and does not intend to request, a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash and/or stock under this Plan.

*1. Tax Consequences to the Debtor*

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

*2. Tax Consequences to Unsecured Creditors*

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands. A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.  WHO MAY VOTE OR OBJECT

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

11

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan impairs the claims in Class 2 and therefore as Class 2 is impaired holders of claims in Class 2 are entitled to vote to accept or reject the Plan. Class 1 under the plan is unimpaired and holders of claims in Class 1 do not have the right to vote to accept or reject the Plan.

### *1. What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was February 18, 2016.***

### *2. What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### *3. Who is Not Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### *4. Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. VOTES NECESSARY TO CONFIRM THE PLAN

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, or (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

*1. Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

*2. Treatment of Non-Accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code.
A plan that binds non-accepting classes is commonly referred to as a "cramdown" plan. The Code allows the Plan to bind non-accepting classes of claims if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, there us at least one impaired class voting in favor of the Plan, the Plan does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim as the variations on this general rule are numerous and complex.***

### C. LIQUIDATION ANALYSIS

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit "D".**

### D. FEASIBILITY

The Debtor will have enough cash on hand on the effective date of the Plan to make the first distribution to the administrative claims. The first payment under the Plan will require a $1,555.75 distribution. The Debtor will make quarterly payments thereafter, in a minimum amount of $905.75 payment under the Plan to Allowed Claims and expenses of the Estate prior to the Effective Date, including U.S. Trustee's Fees in the estimated amount of $650.00, Class 3 General Unsecured Claims in the estimated amount of $905.75.

13

*1. Ability to Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. A copy of the Debtor's two (2) most recent bank statement reflecting an average ending balance of $1,880.75 per month is annexed hereto as **Exhibit "E"**.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Financial Disclosures.***

V. **EFFECT OF CONFIRMATION OF PLAN**

A. **DISCHARGE OF DEBTOR**

In accordance with § 1141(d)(5) of the Bankruptcy Code, upon the completion of all payments required under the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). In accordance with §1141(d)(5) of the Bankruptcy Code, the Court shall upon notice, re-open the Debtor's case to effectuate a discharge of all debts provided for in the Plan.

B. **MODIFICATION OF PLAN**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

C. **FINAL DECREE**

Pursuant to S.D.N.Y Local Rule 3022-1, within 14 days following the full administration of the estate, the plan proponent shall file, on notice to the United States Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

D.  **POST-CONFIRMATION REPORTS**

Pursuant to § 1106(a)(7) of the Bankruptcy Code, the Debtor shall be responsible for filing post-confirmation reports detailing the actions taken and the progress made toward the consummation of the Plan, which reports shall be filed on the 15th day of each October, January, April and July thereafter until the Debtor's case is closed, converted, or dismissed, whichever happens earlier.

Dated: White Plains, New York
　　　　December 2, 2016

　　　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　By:　　*/s/ Todd S. Cushner*
　　　　　　　　　　　　　　　　　　　　　Todd S. Cushner, Esq.
　　　　　　　　　　　　　　　　　　　　　Garvey Tirelli & Cushner, Ltd.
　　　　　　　　　　　　　　　　　　　　　*Attorneys for the Debtor*
　　　　　　　　　　　　　　　　　　　　　50 Main Street, Suite 390
　　　　　　　　　　　　　　　　　　　　　White Plains, NY 10606
　　　　　　　　　　　　　　　　　　　　　todd@thegtcfirm.com